[3 NE3d 113, 980 NYS2d 47]

In the Matter of BETH V., Appellant, v NEW YORK STATE OFFICE OF CHILDREN & FAMILY SERVICES et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent.

Argued October 17, 2013; decided November 19, 2013

**POINTS OF COUNSEL**

*Buckley, Mendleson, Criscione & Quinn, PC*, Albany (*James E. Buckley* and *Richard M. Goldman* of counsel), for appellant. I. The Workers' Compensation Board's December 23, 2010 decision is not supported by substantial evidence in the record and is inconsistent with its own June 11, 2009 decision. (*Matter of Shutter v Philips Display Components Co.*, 90 NY2d 703; *Matter of Hiser v Richmor Aviation, Inc.*, 72 AD3d 1423; *300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176.) II. The December 23, 2010 and September 27, 2012 decisions of the Workers' Compensation Board and Appellate Division, respectively, impermissibly broaden Workers' Compensation Law § 29's scope beyond that envisioned by the legislature, by including settlements paid by an employer to an employee in which no other was involved. (*Bender v Jamaica Hosp.*, 40 NY2d 560; *Matter of Raritan Dev. Corp. v Silva*, 91 NY2d 98; *Dietrick v Kemper Ins. Co. [American Motorists Ins. Co.]*, 76 NY2d 248; *Matter of Petterson v Daystrom Corp.*, 17 NY2d 32; *Hanford v Plaza Packaging Corp.*, 2 NY3d 348; *Matter of Parmelee v International Paper Co.*, 157 AD2d 878; *Matter of Simmons v St. Lawrence County CDP*, 147 AD2d 323; *Matter of Ryan v General Elec. Co.*, 26 NY2d 6; *Matter of Wolfe v Sibley, Lindsay & Curr Co.*, 36 NY2d 505.) III. The December 23, 2010 and September 27, 2012 decisions of the Workers' Compensation Board and

Appellate Division, respectively, create a windfall for the carrier because appellant's workers' compensation benefits and settlement proceeds address different injuries. (*McClary v O'Hare*, 786 F2d 83.)

*State Insurance Fund*, Albany (*Thomas A. Phillips* and *Michael Miliano* of counsel), for New York State Office of Children and Family Services, respondent. The Appellate Division's decision upholding the Workers' Compensation Board's finding that claimant's federal action against her employer and coemployees for intentional tort was a third-party action and that claimant's net recovery is subject to the carrier's credit rights under Workers' Compensation Law § 29 is supported by substantial evidence, is in accord with the law, and must be affirmed. (*Matter of Petterson v Daystrom Corp.*, 17 NY2d 32; *Matter of Simmons v St. Lawrence County CDP*, 147 AD2d 323; *Matter of Parmelee v International Paper Co.*, 157 AD2d 878; *Hanford v Plaza Packaging Corp.*, 2 NY3d 348; *Matter of Ryan v General Elec. Co.*, 26 NY2d 6; *Matter of Shutter v Philips Display Components Co.*, 90 NY2d 703; *Matter of Hiser v Richmor Aviation, Inc.*, 72 AD3d 1423.)

*Steven M. Licht, Special Funds Conservation Committee*, Albany (*Jill B. Singer* of counsel), for Special Funds Conservation Committee, respondent. The Appellate Division's decision upholding the carrier's right to an offset under Workers' Compensation Law § 29 is fully supported as a matter of law and by substantial evidence and must be affirmed. (*Matter of Curtin v City of New York*, 287 NY 338; *DeMarco v Federal Ins. Co.*, 99 AD2d 114; *Matter of Kondracke v Blue*, 277 AD2d 953; *Sormani v Orange County Community Coll.*, 240 AD2d 724; *Hanford v Plaza Packaging Corp.*, 2 NY3d 348; *Matter of Petterson v Daystrom Corp.*, 17 NY2d 32; *Matter of Parmelee v International Paper Co.*, 157 AD2d 878; *Scheer v New York State Ins. Fund*, 22 Misc 3d 239; *Matter of Kirk v Central Hudson Gas & Elec. Co.*, 50 AD3d 1298.)

## OPINION OF THE COURT

READ, J.

This appeal asks us to decide whether a workers' compensation carrier can take a credit under section 29 (4) of the Workers' Compensation Law against the settlement proceeds of a civil rights lawsuit brought by a recipient of workers' compensation benefits against her employer and coemployees for injuries

arising from the same incident. In light of the terms of the settlement in this case, we conclude that the carrier is entitled to offset the full amount of the settlement proceeds.

## I.

In late 2004, claimant Beth V. was employed at the Cass Residential Center, a secure juvenile detention facility operated by the State of New York's Office of Children and Family Services (OCFS) in Rensselaerville, New York (*see* Executive Law art 19-G; Family Ct Act art 3). Beth V. was hired by OCFS as a youth division aide and was assigned to work in the kitchen. M.E., a male resident, was given kitchen duty as part of a facility work program. On December 23, 2004, when M.E. momentarily stepped away from the dining room, Beth V. confiscated a notebook that he had brought with him to the kitchen. According to Beth V., she took away the notebook because M.E. had told her that he was writing notes about her of a sexual nature, and had made crude, sexually explicit gestures. She gave the notebook to the youth division aide on duty, and M.E. "threw a fit" when he discovered this. After this incident, Beth V. claims to have told various supervisors and OCFS employees that she felt "unsafe, uncomfortable and fearful of physical and sexual harm" from M.E.

On December 28, 2004 at 5:50 p.m., near the end of her shift, Beth V. was in an office off the kitchen, logging out from work, with her back to the door. M.E. accosted Beth V. from behind, taking her by surprise. He choked, punched and raped her at knifepoint. After forcing Beth V. to turn over the keys to her jeep, he abducted her from Camp Cass. But when M.E. stopped in Albany to make a phone call at a pay phone, he left Beth V. in the jeep with the keys in the ignition. Beth V. escaped to a local police station where she reported what had happened to her.

As a consequence of M.E.'s attack, Beth V. suffered physical and mental injuries. She made a claim for workers' compensation benefits, and by a decision filed on April 24, 2008, the Workers' Compensation Law Judge (WCLJ) adjudged Beth V. to be permanently partially disabled as a result of work-related injuries to her back, head, neck, left hand, right foot and teeth, as well as rape, post-traumatic stress symptoms and consequential low back injury.

In the meantime, on March 5, 2007, Beth V. filed a lawsuit in federal court against OCFS and three supervisory OCFS employees (collectively, defendants). She claimed that defendants

knew or should have known about M.E.'s "history of being assaultive towards women and carrying knives," and the "gang-related customs" practiced by Camp Cass's residents, including "misogynistic statements, gestures and conduct."

As a first cause of action, Beth V. alleged in her amended complaint that the individual defendants denied her civil rights pursuant to 42 USC § 1983 by various omissions in the training and supervision of OCFS and/or Camp Cass employees, causing her to suffer "physical injuries, pain and mental suffering, embarrassment, humiliation and fear, and to incur expenses for medical care, and deprivation of her liberty." As a second cause of action, Beth V. alleged a hostile work environment in violation of the Human Rights Law, Executive Law § 290 *et seq.*, created by M.E.'s "unwelcome sexual comments, threats and contact," which the defendants caused her to endure, resulting in "psychological, mental and emotional damages." As a third cause of action, Beth V. alleged that OCFS violated 42 USC § 2000e *et seq.* by failing to investigate and remedy M.E.'s "harassing and inappropriate conduct . . . toward her," and as a result she suffered physical, psychological, mental and emotional damages; and for a fourth cause of action, again grounded in the state Human Rights Law, she alleged that OCFS had knowledge of M.E.'s harassment of her, inadequately investigated her complaints and so acquiesced in and effectively condoned M.E.'s "discriminatory conduct," again causing her to suffer physical, psychological, mental and emotional damages. Beth V. demanded compensatory damages from OCFS and the individual defendants, punitive damages from the individual defendants, attorney's fees pursuant to 42 USC § 1988 and such further relief as the court deemed proper.

In addition to denying the operative allegations of Beth V.'s complaint, defendants interposed, among other defenses, that the complaint failed to state a cause of action, the individually named defendants were entitled to qualified immunity, Beth V.'s injuries resulted from an intervening cause, the complaint was barred by the Eleventh Amendment and, since defendants were not personally involved in the alleged constitutional or statutory violations, there was no liability under 42 USC § 1983.

The federal lawsuit was settled by a stipulation and order of discontinuance filed on May 14, 2008, a week after the close of discovery, for "the sum of $650,000 in *compensatory damages* in full settlement of any and all claims, attorney's fees, and costs" (emphasis added) arising from or in any way related to M.E.'s

attack on Beth V. The stipulation further recited in paragraph 10 that

> "[t]he parties acknowledge that [Beth V.]'s claim includes claims for *personal injuries of a physical nature* and that *the entire settlement sum is allocated to [her] personal physical injuries and the loss of enjoyment of life and emotional response related thereto*. The parties further acknowledge that the settlement payment is for *personal physical injuries as set forth in Internal Revenue Code Sec. 104(a)(2)*"
> (emphases added).

Section 104 (a) (2) excludes from an individual's gross income "the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness."[1]

After payments of roughly $220,500 ($218,000 in attorney's fees and $2,500 to satisfy the New York State Crime Victims Board's lien),[2] Beth V. netted about $430,000 from the settlement. By letter dated May 6, 2008, the New York State Insurance Fund (SIF), the workers' compensation carrier in this case, approved the settlement.[3] In so doing, SIF waived its lien[4] against the settlement proceeds, but reserved its right under Workers' Compensation Law § 29 (4) to take a credit against Beth V.'s future benefits in the amount of her net recovery. SIF announced that it would make no additional payments of benefits after September 3, 2008 until this credit was exhausted.

Beth V. protested the cutoff of compensation payments at a hearing on October 17, 2008, when the stipulation's terms were placed on the record. Beth V. took the position that SIF was not entitled to a credit because she sued for damages to compensate a deprivation of civil rights; that in her federal lawsuit she alleged discrimination and creation of a hostile work environment,

---

**1.** Section 104 (a) (1) of the Internal Revenue Code similarly excludes from gross income "amounts received under [worker]'s compensation acts as compensation for personal injuries or sickness."

**2.** The Crime Victims Board apparently compensated Beth V. for certain expenses she incurred as a result of M.E.'s attack.

**3.** Failure to obtain either the carrier's consent to the settlement of an action brought pursuant to Workers' Compensation Law § 29 (1) or a compromise order from the court in which the action is pending bars further payments of compensation (*see* Workers' Compensation Law § 29 [5]).

**4.** The lien was roughly $62,000, consisting of $36,000 in workers' compensation and $26,000 in medical benefits paid since December 2004.

which "demonstrates that such constitutional claims are in a different category from those to which WCL § 29 is normally directed [because] insofar as she was allowed to sue her employer without running afoul of WCL § 11's exclusivity provision,[5] the offset provisions should be treated differently as well"; and that the credit was intended to prevent a double recovery for wage benefits whereas Beth V.'s injuries "derive in part from violations of civil rights amendments to the United States Constitution, and the settlement she negotiated involved demands for punitive relief."

SIF contended that the settlement resolved a third-party action within the meaning of Workers' Compensation Law § 29 (1), entitling it to a credit against future payments for the full amount of Beth V.'s recovery. Citing *Matter of Petterson v Daystrom Corp.* (17 NY2d 32 [1966]), *Dietrick v Kemper Ins. Co. (American Motorists Ins. Co.)* (76 NY2d 248 [1990]) and *Hanford v Plaza Packaging Corp.* (2 NY3d 348 [2004]), SIF espoused the position that

> "where the employer and/or co-employees are accused of intentional torts, the claimant/plaintiff has the right to sue these parties, since the workers' compensation remedy exclusivity defense does not apply, and to collect workers' compensation benefits. Thus, as the employer and co-employees are treated as third parties in these cases, WCL Section 29 applies in order to prevent the claimant/plaintiff from receiving a double recovery."

By decision filed on January 29, 2009, the WCLJ decided that SIF was not entitled to offset the proceeds of a civil rights lawsuit that sought punitive damages. The WCLJ's decision seems to have been informed, in part, by his view that a civil rights lawsuit was not a tort action, or at least was not treated the same as other intentional torts for purposes of section 29. SIF appealed.

---

**5.** Section 11 provides that, once the employer's liability for providing workers' compensation benefits is established, the employee cannot sue the employer for damages sustained from the injury or death that arose out of and in the course of the employment, unless one of a few exceptions applies (*see also* Workers' Compensation Law § 29 [6] [providing that workers' compensation benefits are the exclusive remedy when an employee is injured or killed through the negligence of a coemployee]). Beth V. relies on the exception to the exclusive remedy rule for injuries resulting from an intentional tort perpetrated by or at the direction of the employer and/or a coemployee.

In a decision filed on June 11, 2009, the Workers' Compensation Board (the Board) found that a suit against an employer is a third-party action within the meaning of Workers' Compensation Law § 29 (1); nothing bars the Board's application of section 29 (4) to a claimant's recovery in a federal civil rights lawsuit; and SIF was only entitled to claim a credit against so much of the settlement as compensated Beth V. "for the same injuries which were the basis for the award of compensation." Finding the record inadequate to apply this last principle, the Board returned the case to the trial calendar. The Board instructed the parties to "produce evidence of how [Beth V.'s] net proceeds from her third-party action were allocated between the types of damages sought," and directed the WCLJ to "determine the amount of the net recovery which compensated [Beth V.] for her established physical and psychological injuries and the medical expenses for those injuries, and make a finding that the carrier is entitled to a credit for that amount pursuant to WCL § 29."

At the hearing on remand, the attorney who represented Beth V. in federal court testified about the nature of that lawsuit and the settlement. He explained that Beth V. came to him to explore her options for "bringing an action against her employer, co-employees concerning an event . . . that occurred at Camp Cass in Rensselaerville in which she was . . . first raped and attacked and then kidnapped by one of the [residents]." He testified that although "a number of different cause[s] of action[ ] were stated," the "primary [claim] was for the deprivation of her constitutional right[s] by virtue of the violation of her right to substantive due process"; and "a 42 USC 1983 action was the primary claim where the constitutional deprivation was alleged."

When asked if the settlement was allocated in any way, the attorney replied

> "from the four corners of the document itself you really can't determine that. But the nature of the claim was . . . a constitutional deprivation. [She] was kidnapped. Her Liberty interest was compromised as a result of the allegations that we made. And paragraph ten was very important in the sense that under the Internal Revenue Code 104 . . . if we had strictly a civil rights claim, the award could potentially be taxable. If there is a claim for

violation of civil rights and the person has some physical injury, then you can allocate the recovery entirely towards Section 104, which is a non-taxable provision for pain and suffering . . . Clearly [Beth V.] had physical injury. But . . . if you're asking me what the thrust of the claim was, the thrust of the claim was for her -- the constitutional deprivation, her Liberty interest being deprived, the emotional response to the event. The physical injuries [were] a component, yes. Was it a major component? No."

He added that wage loss and medical expenses "were perhaps a strategic part of the case" that he "never had to use" and, in any event, any such damages would have been "backed out" from Beth V.'s gross recovery under the collateral source rule and so "meant nothing to her as far as the bottom line."

On cross-examination, Beth V.'s attorney was pressed to explain where in the stipulation there was any expression that the payments were made for something other than Beth V.'s personal injuries. He pointed to the statement in paragraph 10 that Beth V. was being compensated, in part, for "loss of enjoyment of life and emotional response," which he attributed to "her deprivation of her liberty and all the constitutional deprivations that she suffered in the context of this event."

The attorney acknowledged there was no reference in the stipulation to punitive damages, stating "[w]as there a punitive aspect to the settlement and our claim, absolutely. Was it characterized in the settlement agreement as punitive damages per se, no." SIF did not call any witnesses, but rather submitted a letter from the Assistant Attorney General who had represented the State in the federal action. This letter simply stated that punitive damages were not involved in the settlement.

In a decision filed on August 9, 2010, the WCLJ opined that, contrary to the Board's decision, a lawsuit against an employer and coemployees was not a third-party action within the meaning of section 29 (1) and, in any event, the settlement resolved claims "for violation of [Beth V.'s] civil and constitutional rights, recovery not included in Workers' Compensation Law § 29." SIF again appealed.

In a decision filed on December 23, 2010, the Board found in SIF's favor, allowing it to take a credit against the whole of the settlement proceeds. Citing *Petterson* and *Hanford*, the Board observed that "a civil lawsuit against an employer or a person in the same employ for sexual harassment or [other] intentional

tort is a third-party action to which WCL § 29 applies." The Board also noted that under section 29 (1), a carrier has a lien "on the proceeds of *any recovery*"; and turning to the facts, that "[t]he damage award resulting from the settlement . . . [was] the result of the same injuries arising from the compensation claim." The Board went on to suggest there was no distinction between categories of damages that might be encompassed within a claimant's settlement anyway, citing section 29 (1)'s "any recovery" language and the Appellate Division's decisions in *Matter of Simmons v St. Lawrence County CDP* (147 AD2d 323 [3d Dept 1989] [carrier's offset rights apply to any recovery by a claimant in a third-party action with the exception of benefits in lieu of "first-party benefits" which the no-fault insurer would have been obligated to pay]) and *Matter of Parmelee v International Paper Co.* (157 AD2d 878 [3d Dept 1990] [stating that whether the claimant's third-party settlement purported to be for pain and suffering was irrelevant in light of the "any recovery" language]). Having previously remanded the case for a determination of how the settlement was allocated as to types of damages, the Board invoked "its WCL § 123 continuing jurisdiction" to the extent its findings were inconsistent with its prior decision.[6] Beth V. appealed.

The Appellate Division affirmed (98 AD3d 1200 [3d Dept 2012]). The court held that "[w]hen a claimant obtains recovery in a civil action for the same injuries that were the predicate for workers' compensation benefits, the carrier has a lien against any recovery, even where the action is brought against an employer or a co-employee" (*id.* at 1201 [citations omitted]). And here, the Appellate Division continued, the settlement stipulation and the testimony of Beth V.'s attorney supplied substantial evidence to support "the Board's conclusion that the injuries for which claimant recovered in the settlement were the same injuries for which workers' compensation benefits were awarded" (*id.*). We granted Beth V. leave to appeal (20 NY3d 857 [2013]), and now affirm.

## II.

Workers' Compensation Law § 29 (1) provides that an employee injured by "the negligence or wrong of another not in the same employ" may commence an action against "such

---

**6.** Section 123 vests the Board with continuing power and jurisdiction to "make such modification or change with respect to former findings, awards, decisions or orders relating thereto, as in its opinion may be just."

other." If the employee has received workers' compensation benefits, SIF or the other entity or person liable for the payment of these benefits

> "shall have a lien on the proceeds of any recovery from such other, whether by judgment, settlement or otherwise, after the deduction of the reasonable and necessary expenditures, including attorney's fees, incurred in effecting such recovery, to the extent of the total amount of compensation awarded under or provided or estimated . . . for such case and the expenses for medical treatment paid or to be paid by it and to such extent such recovery shall be deemed for the benefit of" SIF or the other entity or person liable for the payment of compensation benefits (Workers' Compensation Law § 29 [1]).

Concomitantly, section 29 (4) specifies that "[i]f such injured employee . . . [shall] proceed against such other," SIF or the other entity or person liable for the payment of compensation benefits "shall contribute only the deficiency, if any, between the amount of the recovery against such other person actually collected, and the compensation provided or estimated . . . for such case" (Workers' Compensation Law § 29 [4]).

Section 29 (4) is referred to as the carrier's credit against or right to offset the proceeds of a lawsuit brought pursuant to section 29 (1). The lien and offset provisions in section 29 (1) and (4), respectively, "cushion[ ] the inflationary impact of the cost of compensation insurance and avoid[ ] double recovery by the claimant for the same predicate injury" (*Matter of Granger v Urda*, 44 NY2d 91, 97-98 [1978]). Additionally, the statute "shift[s] the burden of paying compensation from the carrier or self-insured employer to the party actually responsible for . . . the same injury as the settlement of the third-party action" (*Matter of Murphy v New York City Police Dept.*, 270 AD2d 733, 733-734 [3d Dept 2000]).

Beth V. contends that Workers' Compensation Law § 29 (4), the only recoupment provision at issue here since SIF waived its lien, does not apply when the injured employee recovers in a lawsuit against his employer or a fellow employee rather than a third party. She relies on the language stating that Workers' Compensation Law § 29 (1) provides for satisfaction of the carrier's lien when the employee recovers for injuries caused by "another not in the same employ" from the proceeds of a lawsuit against "such other"; and that Workers' Compensation

Law § 29 (4) limits the carrier's obligation to the deficiency between the compensation benefits awarded and the recovery from "such other person." We rejected the selfsame arguments almost 50 years ago in *Petterson*.

Einar Petterson, who was returning from an out-of-state work assignment in an automobile leased by his employer and driven by a coemployee, died when the automobile crashed into a tree in Connecticut. His estate brought a wrongful death action in federal court in Connecticut against the driver and the automobile leasing company, which impleaded Petterson's employer. The action eventually settled, and the employer's carrier sought to have the net proceeds of the settlement credited against its obligations to make future compensation payments to Petterson's survivors. The Board turned down the claim on the ground the settlement did not resolve a third-party action within the meaning of section 29 since the lawsuit was against Petterson's coemployee, not "another not in the same employ." A divided Appellate Division affirmed, and we reversed.

We observed that "[a] mechanical reading" of section 29 "would seem to support the board's view and require an affirmance," but that we were not "bound to accord a literal interpretation to this language if to do so would lead to an egregiously unjust or unreasonable result" (*Petterson*, 17 NY2d at 38). We also noted that since section 29 (6) made workers' compensation the exclusive remedy where the wrongdoer is a fellow employee (*see* n 5, *supra*), it was "[q]uite natural[ ]" for the legislature, when "address[ing] itself to the possibility of a recovery at law for the same injuries, . . . to describe the basis for that lawsuit as tortious conduct by 'another not in the same employ' " (*id.* at 38-39). We therefore held that "[s]ection 29, read in its entirety and in context, clearly reveals a legislative design to provide for reimbursement of the compensation carrier *whenever a recovery is obtained in tort for the same injury that was a predicate for the payment of compensation benefits*," remarking that "[i]t would be unreasonable to read the statute as mandating a different result merely because the recovery came out of the pockets of a coemployee and not from the resources of a stranger" (*id.* at 39 [internal quotation marks omitted and emphasis added]).

We have never deviated from this position. Most recently, while holding that the exclusivity provisions of the Workers' Compensation Law did not preclude an employee from bringing an action against a fellow employee for intentional wrongdoing,

we cautioned that our decision did not mean that the employee could recover twice for the same injuries; specifically, "[t]o the extent that [the employee] recovers damages from [the coemployee] her recovery may be subject to recoupment by the workers' compensation carrier, *as with any recovery by a workers' compensation claimant against a third party*," citing Workers' Compensation Law § 29 (1) (*Hanford*, 2 NY3d at 351 n 3 [emphasis added]). The plaintiff in *Hanford* alleged violations of the state Human Rights Law by a coworker.

Beth V. and the dissent contend that the offset provision in section 29 (4) does not apply because the "constitutional deprivations" that she suffered are distinct from the physical and mental injuries for which SIF was paying compensation benefits. In particular, Beth V. emphasizes that her federal lawsuit sought punitive damages. The Appellate Division has stressed that it is "the character or nature of the compensation benefits for which the lien is sought and not . . . the character or nature of the claimant's recovery in the third-party action" that is important (*Simmons*, 147 AD2d at 325-326). But here, we need not and do not decide whether a carrier is entitled to offset a claimant's recovery of punitive damages. The stipulation alone supplies substantial evidence that the settlement proceeds were intended to compensate Beth V. for the personal physical and mental injuries she suffered at the hands of M.E.— i.e., the same injuries for which she was awarded compensation benefits. The settlement may have been structured as it was solely to afford Beth V. a presumed tax advantage, but the Board was certainly entitled to rely on the stipulation's unambiguous terms. Moreover, the first cause of action in the federal lawsuit was essentially a common-law claim for negligent supervision, even though pleaded as a section 1983 claim in order to fall within the exception from exclusivity for intentional torts. And the other causes of action turned on the sexually abusive conduct of M.E.; unlike *Hanford*, there are no allegations that the individually named defendants committed intentional torts violating Beth V.'s civil rights.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

RIVERA, J. (dissenting). I disagree that a settlement of statutory and constitutional civil rights claims, including claims of conduct that led to harm other than personal injuries, may be credited against a workers' compensation award under Workers'

Compensation Law § 29 (4). To the extent the majority authorizes the State Insurance Fund to take a credit against proceeds that were not associated with the physical and mental injuries suffered as a proximate result of Beth V.'s assault, rape, and kidnapping, I dissent.

The State Insurance Fund demands a credit under Workers' Compensation Law § 29 (4) against the settlement of Beth V.'s federal lawsuit for the assault, rape, and kidnapping she suffered while employed by the State. The Workers' Compensation Board had ordered the carrier to pay benefits for Beth V.'s "injury to the right foot, rape and post-traumatic stress disorder" as well as "teeth and consequential [lower] back [injuries]." The carrier now claims that a credit from Beth V.'s settlement proceeds would avoid a double recovery for the same injuries. However, because the claimant's federal lawsuit asserted claims which were part of the settlement, but which were not compensated by workers' compensation, those claims should remain beyond the reach of the carrier's statutory credit. To hold otherwise is to extend the coverage of the Workers' Compensation Law beyond its intended application, and to deny the claimant settlement proceeds for harms that are independent of the harms remedied by workers' compensation insurance.

The federal complaint alleged, among other things, claims of a hostile workplace and gender-based discrimination that preceded Beth V.'s assault, rape, and kidnapping. The parties entered a "full settlement of any and all claims." The attorney who represented Beth V. in the federal lawsuit testified that the settlement resolved civil rights and constitutional claims apart from the personal injury claims. Notably, the State Attorney General gave no accounting of the settlement, averring only that it did not include punitive damages. Given that this was a global settlement, and the lack of accounting from the State, it cannot be said with certainty that substantial record evidence supports the Board's conclusion that the settlement compensated Beth V. for the same injuries compensated by the Workers' Compensation Law.

The Workers' Compensation Law does not contemplate compensation for injuries to a person's civil rights. Instead, it applies to "disability or death from injury arising out of and in the course of . . . employment" (Workers' Compensation Law § 10 [1]). The complaint asserted claims for harms separate and apart from Beth V.'s personal injuries, and the settlement resolved those claims.

I would reverse and remand for the Workers' Compensation Board to develop a more robust factual record.

Chief Judge LIPPMAN and Judges GRAFFEO, SMITH, PIGOTT and ABDUS-SALAAM concur with Judge READ; Judge RIVERA dissents and votes to reverse in an opinion.

Order affirmed, with costs.